UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAPLEBEAR INC. d/b/a INSTACART, a Delaware Corporation,<br><br>        *Plaintiff*,<br><br>v.<br><br>CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CONSUMER AND WORKER PROTECTION, and COMMISSIONER VILDA VERA MAYUGA, in her official capacity,<br><br>        *Defendants*. | Case No. 1:25-cv-09979 |

**REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

| | |
|---|---|
| Eli Freedberg<br>Michael Paglialonga<br>LITTLER MENDELSON, P.C.<br>290 Broadway Road, Suite 305<br>Melville, NY 11747<br>631.247.4713<br>efreedberg@littler.com<br>mpaglialonga@littler.com | Eamon P. Joyce<br>SIDLEY AUSTIN LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>212.839.5300<br>ejoyce@sidley.com |
| Alexander T. MacDonald<br>  (*pro hac vice*)<br>James A. Paretti, Jr.<br>  (*pro hac vice* movant)<br>LITTLER MENDELSON, P.C.<br>815 Connecticut Ave., NW<br>Washington, DC 20006<br>202.842.3400<br>amacdonald@littler.com | Tobias S. Loss-Eaton<br>Jacob Steinberg-Otter<br>SIDLEY AUSTIN LLP<br>1501 K Street NW<br>Washington, DC 20005<br>202.736.8000<br>tlosseaton@sidley.com<br>jacob.steinbergotter@sidley.com |

*Counsel for Plaintiff*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

Preliminary statement ............................................................................................................. 1

Argument ................................................................................................................................ 1

I.      Instacart is likely to succeed on the merits ..................................................................... 1

        A.      The FAAAA preempts the Local Laws ...................................................... 1

              1.      Shoppers on Instacart's platform are motor carriers ...................... 2

              2.      The Local Laws relate to shoppers' prices, routes, or services ............................................................................................................ 4

        B.      New York State law preempts the Local Laws ........................................ 7

        C.      The Local Laws violate the dormant Commerce Clause ....................... 10

II.     Irreparable harm and other factors favor relief ............................................. 12

Conclusion ............................................................................................................................ 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACE Sec. Corp v. DB Structured Prods., Inc.*,
   197 N.E.3d 978 (N.Y. 2022) .................................................................................. 10

*ArcBest II, Inc. v. Oliver*,
   593 F. Supp. 3d 957 (E.D. Cal. 2022) ..................................................................... 7

*Bd. of Educ. of Union Free Sch. Dist. No. Six v. Town of Greenburgh*,
   13 N.E.2d 768 (N.Y. 1933) ..................................................................................... 9

*Bedoya v. Am. Eagle Express, Inc.*,
   914 F.3d 812 (3d Cir. 2019) ................................................................................ 5, 7

*Bratton v. Roadway Package Sys., Inc.*,
   77 F.3d 168 (7th Cir. 1996) .................................................................................... 2

*Cal. Trucking Ass'n v. Bonta*,
   996 F.3d 644 (9th Cir. 2021) .................................................................................. 6

*City of Philadelphia v. New Jersey*,
   437 U.S. 617 (1978) .............................................................................................. 11

*Dan's City Used Cars, Inc. v. Pelkey*,
   569 U.S. 251 (2013) ................................................................................................ 4

*Granholm v. Heald*,
   544 U.S. 460 (2005) .............................................................................................. 11

*ILC Data Device Corp. v. County of Suffolk*,
   146 Misc. 2d 462 (Sup. Ct., Suffolk Cnty. 1989) ................................................... 8

*ILC Data Device Corp. v. County of Suffolk*,
   182 A.D.2d 293 (2d Dep't 1992) ............................................................................ 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................ 3

*Mass. Delivery Ass'n v. Coakley*,
   769 F.3d 11 (1st Cir. 2014) ..................................................................................... 7

*Mass. Delivery Ass'n v. Healey*,
   821 F.3d 187 (1st Cir. 2016) ................................................................................... 2

*Miller v. C.H. Robinson Worldwide, Inc.*,
   976 F.3d 1016 (9th Cir. 2020) ................................................................................ 7

*Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC*,
   503 F. Supp. 2d 1200 (E.D. Mo. 2007) ................................................................... 3

*PhRMA v. Concannon*,
   249 F.3d 66 (1st Cir. 2001) ..................................................................................... 3

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016) ................................................................................................ 2

*Rowe v. New Hampshire Motor Transportation Ass'n*,
   552 U.S. 364 (2008) ............................................................................................ 4, 5

*Shumway v. United Parcel Serv., Inc.*,
   118 F.3d 60 (2d Cir. 1997) .................................................................................... 11

*Tanvir v. Tanzin*,
   894 F.3d 449 (2d Cir. 2018) .................................................................................... 3

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ...................................................................................... 13

*Variscite NY Four, LLC v. N.Y.S. Cannabis Control Bd.*,
   152 F.4th 47 (2d Cir. 2025) ................................................................................... 10

**Statutes**

49 U.S.C. § 13102 ........................................................................................................ 2

49 U.S.C. § 13501 ........................................................................................................ 3

49 U.S.C. § 13506(b)(2) ............................................................................................... 3

49 U.S.C. § 14501(c)(1) ............................................................................................... 4

N.Y. Gen. Bus. Law § 1415 .................................................................................... 9, 10

N.Y. Lab. Law §§ 218-b, 1030–1039, 1050–1055 ....................................................... 8

N.Y. Mun. Home Rule Law § 11(1)(f) ......................................................................... 8

## PRELIMINARY STATEMENT

The City's Opposition fails to rebut Instacart's core points.

On FAAAA preemption, the statute's language—which the City never addresses—plainly covers the shoppers who use Instacart's platform. The City's remaining points therefore collapse: The Local Laws relate directly to shoppers' prices, routes, and services, triggering preemption. Shoppers' pay is not just an "input" for a motor carrier's business because they *are* the motor carriers.

The City also does not rebut New York State-law preemption. Though the City claims free reign because the Local Laws regulate independent contractors rather than employees, that view lacks support.

On the dormant Commerce Clause, the City does not dispute that the Laws single out only those third-party grocery-delivery services lacking a local retail presence. It responds only that this differential treatment is justified because Instacart is unlike entities with a local retail presence—a wholly circular response.

With the Laws poised to upend Instacart's business model, harming its goodwill with consumers and shoppers and imposing unrecoverable costs, preliminary relief is warranted.

## ARGUMENT

**I.      Instacart is likely to succeed on the merits.**

    A.      <u>The FAAAA preempts the Local Laws.</u>

The City's argument stumbles out of the gate by invoking a "presumption against preemption." Opp. 8 (Dkt. 33). When, as here, a "statute contains an express pre-emption clause," courts "do not invoke any presumption against pre-emption but

instead focus on [its] plain wording." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (cleaned up). Regardless, the City's argument rests on a mistaken premise—that shoppers aren't "motor carriers"—that it cannot defend. Thus, it does not matter that Instacart itself is not a motor carrier.

          1.     *Shoppers on Instacart's platform are motor carriers.*

The City declares without citation that the FAAAA "was not meant to apply to the local delivery person using their own personal vehicle." Opp. 10 n.6. Starting from that unsupported premise, the City accuses Instacart of "provid[ing] no support" for treating "'shoppers,' the independent contractors, [as] motor carriers." *Id.* at 10.

The necessary support, however, is found in the FAAAA itself. Again, a "motor carrier" is simply "a person providing motor vehicle transportation for compensation," and "transportation" includes "the movement of … property" and related services like "arranging for, receipt, delivery, … handling, packing, [and] unpacking." 49 U.S.C. § 13102(14), (23)). Courts have applied this language broadly to reach all manner of motor-vehicle operators, including couriers and delivery services. *See* Mem. 14–15 (Dkt. 8). Instacart has explained without contradiction that shoppers who use its platform (i) use motor vehicles to (ii) deliver property and (iii) perform related services like handling and packing. *Id.* at 14. No more is required.

It does not matter that shoppers are independent contractors. *See Mass. Delivery Ass'n v. Healey*, 821 F.3d 187, 192–93 (1st Cir. 2016) (applying the statute to independent couriers); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 174 (7th Cir. 1996) (independent contractor who delivered packages was a "motor carrier"). Nor does it matter that shoppers use their own vehicles; many long-haul

truckers own their trucks too. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC*, 503 F. Supp. 2d 1200, 1201 (E.D. Mo. 2007). For that matter, the statutory scheme specifically exempts from federal regulatory jurisdiction "transportation by motor vehicle provided casually, occasionally, or reciprocally but not as a regular occupation or business," 49 U.S.C. § 13506(b)(2)—which would be nonsensical unless such transportation qualified as "transportation by motor carrier" to begin with, *see id.* § 13501.

"Where the statutory language provides a clear answer, our analysis ends." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (cleaned up), *aff'd,* 592 U.S. 43 (2020). The City never addresses the language defining "motor carrier," because it cannot. That the City *also* cites no authority for its view is just icing on the cake.

Pivoting, the City declares that Instacart lacks third-party standing to assert preemption on shoppers' behalf. *See* Opp. 10–11 & n.7. But the Local Laws regulate Instacart directly, *id.* at 11, and there is "ordinarily little question" that a plaintiff who "is himself an object of the action … at issue" has standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). What's more, preemption claims are not subject to a zone-of-interests-type analysis; "a state or territorial law can be unenforceable as preempted … even when the federal law secures no individual substantive rights for the party arguing preemption." *PhRMA v. Concannon*, 249 F.3d 66, 73–74 (1st Cir. 2001) (citing cases), *aff'd sub nom. PhRMA v. Walsh*, 538 U.S. 644 (2003).

The City also tries the converse argument: It says preemption cannot apply because the Local Laws "impose obligations on third-party grocery delivery services,

3

like [Instacart], not on their independently contracted shoppers." Opp. 11. That is irrelevant. In *Rowe v. New Hampshire Motor Transportation Association*, the challenged state law prohibited "licensed tobacco retailers [from] employ[ing] a 'delivery service' unless that service follow[ed] particular delivery procedures." 552 U.S. 364, 371 (2008). The law thus told "*shippers* what to choose rather than *carriers* what to do." *Id*. at 372. Preemption still applied because the law related to carriers' services. *Id*. The same is true here, as discussed next.

> 2. *The Local Laws relate to shoppers' prices, routes, or services.*

The City tries to throttle the FAAAA's preemption test, arguing that (i) the term "related to" "has been … increasingly narrow[ed]" and (ii) the phrase "with respect to the transportation of property" "massively limits" preemption. Opp. 9 (cleaned up). The City's cited cases say otherwise. The FAAAA's use of "related to" "expresses a broad pre-emptive purpose," and the "with respect to" clause simply makes clear that a law must "concern a motor carrier's 'transportation of property'" to trigger preemption. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260–61 (2013). Instacart's claims easily satisfy these standards.

The City rejoins that the Local Laws aren't "related to a price, route, or service of any motor carrier," 49 U.S.C. § 14501(c)(1), because they "do not require *Plaintiff* to make any changes in its prices, routes or services," Opp. 13 (emphasis added). Again, the City looks at the wrong party. The shoppers are the motor carriers, so what matters is the Local Laws' effect on *shoppers'* prices, routes, or services.

On that score, the City declares that the Local Laws "do not regulate … workers' prices." *Id*. at 10. Nonsense. A worker's "price" is her compensation. And the

4

whole point of Local Law 124 is to increase delivery workers' compensation by setting "minimum rates of pay." *Id.* at 2. The law does so directly, by mandating when, how, and how much shoppers are paid. This is an explicit regulation of motor carriers' prices. A state law requiring airline passengers to pay at least $1,000 per ticket would not avoid preemption on the basis that it regulates only passengers, not air carriers. So too here. *Cf. Rowe*, 552 U.S. at 371–72.

The City tries to duck this conclusion by asserting that shoppers on Instacart's platform already lack "agency" to "set the rates for their services." Opp. 10–11. That is both wrong and irrelevant. It is wrong because, if a shopper disagrees with the compensation set for a particular batch, she may decline it or "negotiate for an increase of that payment with Instacart." Instacart Independent Contractor Agmt. ¶ 3.5 (Dkt. 10-1). And it is irrelevant because preemption applies if a law effectively "binds a carrier to provide or not provide a particular price." *Bedoya v. Am. Eagle Express, Inc.*, 914 F.3d 812, 823 (3d Cir. 2019). The Local Laws do exactly that by mandating that shoppers be paid no less than a particular amount, calculated in a particular way. More broadly, preemption does not depend on the specifics of existing compensation or service arrangements, *see Rowe*, 552 U.S. at 372; the FAAAA forbids the "substitution of … governmental commands for 'competitive market forces.'" *Id.*

The City's remaining arguments rely on the same error: They refuse to analyze the Local Laws' effects on the actual motor carriers—the shoppers. For example, the City says preemption is not triggered if a law regulates only "a motor carrier's inputs,

5

like labor, capital, and technology costs." Opp. 11–12 (quoting *Bedoya*, 914 F.3d at 823). On this view, "a regulation of a resource input, like minimum wage laws," escapes preemption. *Id.* at 12. But a worker's labor is an "input" only for an employer. For the worker herself, her labor is the service she provides, and the compensation she receives is her price for doing so. And since the motor carriers here *are* the workers, the Local Laws do not regulate inputs, but prices (and, in turn, services). *See* Mem. 15–17.

Put differently, the Local Laws do not regulate "a motor carrier's relationship with its workforce," Opp. 12, because the motor carriers here *are* the workforce. As the City acknowledges, shoppers are independent contractors; they provide delivery services themselves, not as an "input" to another motor carrier's services. *See id.* at 15. Thus, the City's cited cases dealing with "preemption challenges to worker protection laws," *id.* at 13, are distinguishable; those cases involved the relationships between motor carriers and their employees, not independent contractors who *were* motor carriers.

These cases are also inapt for another reason: They deal with "generally applicable 'background' laws," *id.* at 14, of the kind that apply "to hundreds of different industries," *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 659 (9th Cir. 2021) (cleaned up). The Local Laws, by contrast, apply only to third-party grocery-delivery platforms, which (as the City nowhere disputes) contract overwhelmingly with workers who use motor vehicles. In other words, the Local Laws apply only to a specific industry that uses motor carriers, and almost every covered person in that

6

industry is a motor carrier. *See Bedoya*, 914 F.3d at 821 (asking "whether the state law at issue applies to all businesses or whether it focuses on motor carriers"). Though the City declares these laws "generally applicable," Opp. 11, it has no response to this basic point. Likewise, the City is wrong to dismiss concerns about a regulatory patchwork; if New York City can establish an intricate web of compensation, tipping, and record-keeping standards for motor carriers who deliver groceries, so can every other city or state.

The City thus errs by conducting a multi-step analysis of the Local Laws "directness" and "significance." *See id.* at 11–14. The "significance" inquiry is necessary only for generally applicable laws with merely a "tenuous, remote, or peripheral" impact on carrier prices, routes, or services. *See Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014); *see also Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1022 (9th Cir. 2020). Because the Local Laws are not generally applicable, instead focusing on a class of motor carriers, and because they directly regulate those motor carriers' prices (and thus their services), preemption applies. *See ArcBest II, Inc. v. Oliver*, 593 F. Supp. 3d 957, 971 (E.D. Cal. 2022) (holding that law setting minimum and maximum rates for certain motor carriers was preempted without analyzing "significance" of effects). But even viewed through a "significance" lens, direct price regulation is squarely preempted.

B.  New York State law preempts the Local Laws.

The Local Laws also charge headlong into a field that New York State has reserved for itself through laws of true general applicability—the Labor Law,

7

including the Minimum Wage Act, and the Freelance Isn't Free Act. The City has no adequate answer.

The City says State Labor Law doesn't preempt because the Local Laws regulate independent contractors rather than employees, whereas the Minimum Wage Act covers only employees. *See* Opp. 15. To start, other Labor Law provisions expressly regulate independent contractors. *See* N.Y. Lab. Law §§ 218-b, 1030–1039, 1050–1055 (Health and Essential Rights Act, Fashion Workers Act, and Trapped at Work Act). Moreover, the City doesn't explain why employees (as opposed to other types of laborers), instead of minimum-pay standards, constitute the relevant field for preemption. Nor does it acknowledge that a local law can be preempted when it "prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe." *ILC Data Device Corp. v. County of Suffolk*, 182 A.D.2d 293, 300 (2d Dep't 1992) (citation omitted); *see also id.* at 301 (concluding that county law imposing workplace standards for video display terminal (VDT) operators was preempted by the Labor Law's "comprehensive regulatory scheme" despite "no State-wide statutory or regulatory provisions governing the use of VDTs in the workplace").

What's more, the City overlooks that the Municipal Home Rule Law prohibits local legislation that "[a]pplies to or affects any provision of … the labor law." N.Y. Mun. Home Rule Law § 11(1)(f). This prohibition plainly covers a local worker-compensation law like those at issue here. *See* Mem. 20; *see also ILC Data Device Corp. v. County of Suffolk*, 146 Misc. 2d 462, 467 (Sup. Ct., Suffolk Cnty. 1989) ("The

8

words 'applies to' and 'affects' hardly could be more obvious or more sweeping in scope."), *aff'd*, 182 A.D.2d 293 (2d Dep't 1992).

The City also misses the broader point: The Labor Law and the Freelance Isn't Free Act *together* govern the State's labor economy. *Compare* Mem. 20–21, *with* Opp. 17–19. The City doesn't dispute that the Freelance Isn't Free Act's "express premise" "was that freelancers' compensation would be *contractually* established," and the Act "expressly required that the contract include terms on the rate and method of compensation." Mem. 20–21 (cleaned up). That premise complements a premise of the Labor Law, which is that employees will be paid an hourly wage—whose minimum is set by state law. Together, these laws set out a comprehensive state policy setting out how different classes of workers in the New York economy will be paid. The City has nothing of substance to say about these provisions, which preempt the field of labor law establishing minimum-pay rules and record-keeping standards.

Instead, the City tries to escape preemption by misconstruing the Freelance Isn't Free Act's savings clause. *Compare* Opp. 16, *with* Mem. 21 (explaining savings clause). Whereas a provision in that clause states that the Act "supplement[s], and do[es] not diminish or replace, any other basis of liability or requirement established by statute or common law," N.Y. Gen. Bus. Law § 1415(2), the phrase "by statute" refers to State—not local—law, *see Bd. of Educ. of Union Free Sch. Dist. No. Six v. Town of Greenburgh*, 13 N.E.2d 768, 770 (N.Y. 1933) ("Expressions such as … 'allowed by law,' 'made by law,' … 'created by law,' and 'a law of the state,' as used in the statutes, refer exclusively to the statute law of the state unless, by the purposes of

9

the statute where the words are used, a broader signification is required." (citation omitted)). And Corporation Counsel has recognized as much in similar circumstances. *See* Carol O'Cleireacain, Fin. Comm'r, 1991 NYC Corp. Counsel LEXIS 41, at *11 (Aug. 8, 1991) ("[T]he term 'as otherwise provided by law' used in these [tax secrecy] provisions refers to State law and does not include local laws.").

Indeed, the State Act's savings clause further disclaims preemption of the City's own Freelance Isn't Free Act, confirming this interpretation. *See* N.Y. Gen. Bus. Law § 1415(5); Mem. 21. Reading the phrase "by statute" in the clause to include local laws would render the clause's other provision concerning the City Act superfluous. *See ACE Sec. Corp v. DB Structured Prods., Inc.*, 197 N.E.3d 978, 982–83 (N.Y. 2022). Further, the narrowness of the provision against preemption of the City Act only underscores the State Act's broad preemptive reach, *see* Mem. 21—a point about which the City says nothing.

C. The Local Laws violate the dormant Commerce Clause.

On discrimination against interstate commerce, the City spends pages tip-toeing around the fact that, if only Instacart had an "brick-and-mortar retail presence in New York City," Opp. 19, it would be exempt from the Local Laws even though it would remain "a multi-sided digital marketplace primarily used to facilitate grocery shopping and deliver and/or pickup services," *id.* (quoting Compl. ¶ 3 (Dkt. 1)). That is, by becoming more *local*, Instacart would avoid the burdens that fall on it because it is foreign. *See* Mem. 24–25, 25 & n.4. The City thus ignores that "prox[ies] and correlative[s]" for local and non-local are telltale signs of "discriminat[ion] against out-of-staters." *Variscite NY Four, LLC v. N.Y.S. Cannabis Control Bd.*, 152 F.4th 47,

10

63 (2d Cir. 2025)). And in trying to distinguish Instacart from local retailers who avoid the Local Laws' burdens, *see* Opp. 19–20, the City simply proves the point. Discrimination doesn't require *identical* comparators, only those that are "similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). That an entity that facilitates app-based grocery-delivery services also has a local outlet from which its independent delivery contractors pick up is immaterial to the Local Laws' stated purposes of worker protection. *See* Opp. 19–20.

The City similarly can't sugarcoat the Local Laws' discriminatory purpose. It's no response that the Laws "ensure that grocery delivery workers have the same 'minimum pay protections as food delivery workers.'" *Id.* at 21 (citation omitted). Again, the laws do so only for grocery-delivery workers who happen to contract with a platform like Instacart, rather than entities with a local retail presence. And "whatever [the City's] ultimate purpose, it may not be accomplished by discriminating against articles of commerce coming from outside the State unless there is some reason, apart from their origin, to treat them differently." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 626–27 (1978); *see also Granholm v. Heald*, 544 U.S. 460, 474–76 (2005) (law imposing extra regulatory burdens on wineries without a physical New York presence violated Commerce Clause).

Finally, the City's attempt to contest the discriminatory effects of the Local Laws crumbles. That the Laws would cause Instacart to undertake platform changes and incur additional costs is far from "speculative." Opp. 22–23. Instacart's declarant detailed the nature and extent of the required platform changes, such as replacing

11

the current open-market model with a restricted offer model, adopting systems for tracking "on call" and "trip" time and utilization rate, and reworking the tipping interface for customers. *See* Tandler Decl. ¶¶ 26, 37–39 (Dkt. 9). The declarant, a Director of Product who has overseen previous platform-wide changes, "estimate[d] that developing and deploying these changes will require engineer work roughly equivalent to at least five to six full-time engineers working over the course of an entire year, plus significant additional time from product managers, designers, data scientists, and operations staff." *Id.* ¶ 38. And she described internal research showing that many shoppers reported they would stop using Instacart's platform if these changes are implemented, thus harming Instacart's goodwill and bottom line. *See id.* ¶ 43. This isn't speculation.

## II. Irreparable harm and the other factors favor relief.

The City offers meek responses on the remaining preliminary-injunction factors. It primarily says that Instacart's loss of goodwill and business and the diversion of its resources toward compliance are speculative or conclusory. *See* Opp. 25–27. But the City fails to engage with Instacart's in-depth explanation that its "business depends on the flexibility, independence, and convenience that its platform offers," and "[t]he Local Laws directly imperil these features." Mem. 27–28; *see* Tandler Decl. ¶¶ 16–17, 24, 28–31, 40–45. Unlike the City's unexamined rush to regulate grocery-delivery services, *see* Mem. 2, 5–8; Opp. 3–5 (admitting it relied on the restaurant-delivery experience alone), Instacart has spent years studying what makes its platform attractive to shoppers and consumers alike, developing features to improve the platform accordingly, then studying how the revisions the Local Laws

12

would require will harm those enterprise-critical relationships, Mem. 28–29. The City also fails to address the irreparable harm from unrecoverable compliance costs due to the lack of a federal cause of action for damages against the City and the presumptively irreparable harm from a constitutional violation. *See id.* at 29–32. Nor did Instacart "dela[y]" in bringing suit, Opp. 27; the Department of Consumer and Worker Protection was still undertaking rulemaking to implement the Local Laws until the end of 2025. If this was "delay," it was not improper. *Cf. Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995).

As to the equities and the public interest, and putting aside harm to Instacart, "shoppers stand to lose opportunities, consumers stand to lose a service or pay a higher price for it, and retailers stand to lose business," and "neither the City nor the public has an interest in enforcing a preempted or unconstitutional law." Mem. 33.

## CONCLUSION

For these reasons and those stated in Instacart's opening Memorandum, the Court should enjoin the Local Laws' enforcement against Instacart.

13

December 30, 2025                                    Respectfully submitted,

                                                     */s/ Eamon P. Joyce*

Eli Freedberg                                        Eamon P. Joyce
Michael Paglialonga                                  SIDLEY AUSTIN LLP
LITTLER MENDELSON, P.C.                              787 Seventh Avenue
290 Broadway Road, Suite 305                         New York, NY 10019
Melville, NY 11747                                   212.839.5300
631.247.4713                                         ejoyce@sidley.com
efreedberg@littler.com
mpaglialonga@littler.com

Alexander T. MacDonald                               Tobias S. Loss-Eaton
  (*pro hac vice*)                                   Jacob Steinberg-Otter
James A. Paretti, Jr.                                SIDLEY AUSTIN LLP
  (*pro hac vice* movant)                            1501 K Street NW
LITTLER MENDELSON, P.C.                              Washington, DC 20005
815 Connecticut Ave., NW                             202.736.8000
Washington, DC 20006                                 tlosseaton@sidley.com
202.842.3400                                         jacob.steinbergotter@sidley.com
amacdonald@littler.com

                             *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2025, I electronically filed the foregoing with the Clerk of the Court by using the ECF system, which will send a notice electronically to Defendants' counsel of record.

/s/ Eamon P. Joyce
Eamon P. Joyce

**CERTIFICATE OF WORD COUNT**

I certify that the qualifying portions of the foregoing memorandum of law contains 3,500 words and therefore complies with Local Rule 7.1(c) and this Court's order dated December 9, 2025 (Dkt. 29).

/s/ Eamon P. Joyce
Eamon P. Joyce