

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Jordan Schneider<br>Administrative Law Division<br>Phone: (212) 356-2180<br>Facsimile: (212) 356-2019<br>jschneid@law.nyc.gov |

January 16, 2026

**BY ECF**
Hon. John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  Maplebear Inc. d/b/a Instacart v. City of New York et al.
            Civil Action No.: 1:25-cv-09979

Your Honor:

      I am an attorney in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for Defendants in the above-referenced action. Defendants submit this letter in response to the two questions posed by the Court at the January 15, 2026 oral argument on Plaintiff's motion for a preliminary injunction. Those questions include: (1) If Instacart created a retail establishment in New York City, would it be subject to the Local Laws; and (2) If Instacart created a retail establishment across City lines, for example, in Nassau County or New Jersey, would it be subject to the Local Laws. Defendants submit that the answer to both of these questions is yes, Instacart would be subject to the Local Laws.

      The relevant question in determining whether Instacart meets the definition of "third-party grocery delivery service" is not whether Instacart opens a store in or near New York City ("NYC" or "City"), it is whether Instacart owns *all* the grocery stores from which it delivers in NYC. Instacart's claim at oral argument that a grocery delivery company can avoid coverage by erecting a brick-and-mortar store in NYC is incorrect. Because coverage under Local Law 124 hinges on whether the company delivers goods from *only* its own stores, if Instacart opened a NYC store but otherwise did not change its business of delivering groceries from other companies, it would still be covered under Local Law 124. Instacart's Dormant Commerce Clause argument misconstrues federal law by describing the Local Law's neutral "third-party" coverage requirement as a burden on interstate commerce. It is not. The Local Law's third-party coverage

requirement has the same impact on in-state and out-of-state businesses and does not have a discriminatory purpose.

**Instacart Is Incorrect About the Local Law's Effect**

A "third-party grocery delivery service" means any website, mobile application, or other internet service that: (i) facilitates, offers or arranges for the delivery of goods from a retail food establishment; and (ii) is owned or operated by a person other than the person who owns such retail food establishment." A "retail food establishment" – typically, a grocery store – is a business establishment *located in New York City*, a requirement that ensures the Local Law regulates local conduct. The retail food establishment may be owned by a domestic or foreign company—the law does not distinguish between owners that are in-state or out-of-state businesses. Therefore, a third-party grocery delivery service is essentially any app that facilitates the delivery of goods from a grocery store that is located in NYC and owned by another business.

Instacart meets the definition of third-party grocery delivery service by arranging for the delivery of groceries exclusively from grocery stores owned by other businesses. However, to meet the definition of third-party grocery delivery service, a delivery company does not have to facilitate deliveries exclusively for third parties. Once an app facilitates deliveries from a single NYC grocery store that is owned by another company, the app meets the definition of a third-party grocery delivery service. This rule applies to any business, whether a smaller business that only operates in New York or a large multi-national business headquartered outside the City. The Local Law's application does not favor or burden foreign corporations based on its local retail presence or lack thereof. For example, Shipt, a wholly-owned subsidiary of Target, offers delivery both from Target stores in New York City *and* from other businesses it does not own, like Stop & Shop. This makes it a third-party grocery delivery service. Similarly, if Amazon delivers goods from any grocery store in the City that Amazon does not own, it would be covered under Local Law 124, too. Accordingly, simply establishing some retail presence in NYC and facilitating deliveries from its own stores would not exempt Instacart from the definition, provided Instacart continued to deliver from grocery stores in NYC owned by other companies.

Instacart also would not be exempt from Local Law 124 if it simply opened and delivered from an Instacart grocery store outside NYC, whether in Nassau County or in New Jersey, provided Instacart continued to deliver from grocery stores in NYC owned by other companies.

**Instacart Misconstrues the Local Laws' Purpose**

Besides misconstruing Local Law 124's definitions, Instacart also mischaracterizes the Local Law's purpose. Although Instacart confuses the third-party grocery delivery service definition to make it seem like the City is targeting out-of-state businesses, this is simply not true. The Local Laws cover a broad swath of delivery services, those with a retail presence and those with no retail presence in the City. Variations in obligations for third-party food delivery services, third-party courier services, third-party grocery delivery services, and other delivery services reflect considered policy judgments that have nothing to do with the in-state or out-of-state character of businesses.

New York City's third-party delivery service regulations are not new and have never been about discriminating against interstate businesses. The "third-party" concept first appeared in local law in 2022, in connection with a slate of new laws meant to protect restaurants and delivery workers from certain practices of third-party food delivery services, like Uber, DoorDash, and Grubhub. These apps, which provided food delivery services to restaurants and engaged delivery workers as independent contractors, charged high fees to the restaurants they served and paid low wages to workers; the 2022 laws imposed limits on these practices. N.Y.C. Admin. Code § 20-563 *et seq*; N.Y.C. Admin. Code § 20-1501 *et seq*. The 2022 delivery worker protection laws also covered third-party courier services, including Relay, a company that described itself as a NYC start-up with 98 percent of its business from the City. See Declaration of Samantha Schonfeld, dated December 23, 2025 (ECF No. 31), Ex. 28 at p. 7; Relay Delivery, Inc. v. New York City Department of Consumer and Worker Protection, et al., Index. No. 155944/2023, NYSCEF Doc. No. 1 at ¶ 36. In 2025, recognizing a loophole in the regulatory scheme for similar third-party grocery delivery services, like Instacart and Shipt, City Council passed Local Law 124 to extend minimum pay protections to grocery delivery workers, maintaining the "third-party" service distinction to cover services similar to the original set of third-party restaurant delivery apps. The legislative findings in Local Law 124 make clear that the law was premised on findings that, *inter alia,* food delivery workers and grocery delivery workers for third-party delivery services perform substantially similar work and have substantially similar working conditions, and so existing minimum pay requirements for food delivery workers were appropriate for grocery delivery workers.

Further, Instacart ignores that delivery services that only deliver from their own grocery stores will be subject to minimum pay obligations by, at the latest, March 2027. Local Law 123 mandates that the New York City Department of Consumer and Worker Protection ("DCWP") establish by rule minimum pay requirements for "delivery services" no later than March 2027. Local Law 123 provided additional time for DCWP to establish minimum pay requirements for a much broader universe of businesses. The term "delivery service" includes third-party food delivery services, third-party courier services, and third-party grocery delivery services, but also includes third-party delivery services that do not deliver from grocery stores or restaurants. The minimum pay requirements will also cover delivery services that do offer grocery delivery but exclusively from their own stores or warehouses in NYC. The longer timeframe allows DCWP additional time to consider various factors set forth in N.Y.C. Admin. Code § 20-1522(f), including variations among the delivery services and their workers, before issuing the rule.

Because the Local Laws do not discriminate against interstate businesses in purpose, effect or on their face, Plaintiff's motion for a preliminary injunction should be denied.

- 4 -

                                                                Respectfully submitted,

                                                                /s/ *Jordan Schneider*

                                                                Jordan Schneider
                                                                Assistant Corporation Counsel

cc:     All Counsel (via ECF)