

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1 212 839 8555
EJOYCE@SIDLEY.COM

January 20, 2026

**Via ECF**

The Honorable John G. Koeltl
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *Maplebear Inc. d/b/a Instacart v. City of New York et al.*
               <u>No. 1:25-cv-09979: Response to City's Post-Argument Letter</u>

Dear Judge Koeltl,

       On behalf of Plaintiff Maplebear Inc. d/b/a Instacart, we write in response to Defendants' letter addressing the Court's question at the January 15 motion hearing—whether Local Law 124 would apply to an entity that arranges for the delivery of goods from a food retailer that it owned in New Jersey, rather than in New York City.

       In their response (Dkt. No. 38), Defendants largely evade this question. Instead, they have taken the liberty of effectively filing a surreply that ranges well beyond the scope of the Court's inquiry. These new arguments on the dormant Commerce Clause issues, which Defendants could have made all along, are improper. *See, e.g., Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) ("Plaintiffs did not raise this argument in their opposition and it is beyond the scope of the surreply authorized by the April 16 Order. As such, it is not properly before the Court." (footnote omitted)); *Jericho Grp. v. Mid-Town Dev. Ltd. P'ship*, 816 F. App'x 559, 564 (2d Cir. 2020) (appellant "improperly raised [an] argument … for the first time in its proposed sur-reply" to the district court).

      Regardless, the plain text of Local Law 124 provides all the answers. It defines "third-party grocery delivery service" as "any website, mobile application, or other internet service that: (i) facilitates, offers or arranges for the delivery of goods from *a retail food establishment*; and (ii) is owned or operated by a person other than the person who owns *such retail food establishment*." Local Law No. 124 § 2 (Sept. 10, 2025), https://intro.nyc/local-laws/2025-124 (emphases added). And "'retail food establishment' means any business establishment *located in the city* that is licensed as a food processing establishment … or as a retail food store or food warehouse." *Id.* (emphasis added). Thus, under the Court's hypothetical, a delivery arranged via Instacart from a retailer in New Jersey would be subject to the Law, regardless of whether Instacart owned that retailer: "A third-party grocery delivery service" must "make payments to grocery delivery workers retained by such service that meet or exceed the minimum pay requirements for food delivery workers established by the [Department of Consumer and Worker Protection]." *See id.* § 3.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Hon. John G. Koeltl
January 20, 2026
Page 2

      Defendants' turn to new arguments confirms that they have no good answer to the Local Laws' constitutional infirmities as written. They spill much ink on whether Instacart would be subject to the Local Laws if it opened a retail establishment outside the City. *See* Dkt. No. 38. But that is beside the point. What matters is this: If Instacart wants the "privilege" to operate within New York City, it has only two options. One: Instacart facilitates deliveries exclusively from retail locations it owns and operates in the City—that is, it increases the degree of its local presence, and does so significantly—and thereby escapes additional regulatory burdens. Or two: Instacart continues to facilitate deliveries from at least some locations it does not own—that is, it maintains less of a local presence—but becomes subject to the Law's burdens. At the same time, the Local Laws provide a protectionist path to entities with existing City retail locations to launch a grocery delivery service—even using Instacart's prior business model and drawing on its longtime shoppers—that escapes the new regulatory burdens that will fall on Instacart. While the City argues that the Local Laws are not discriminatory because they also cover Shipt (which is owned by a big-box retailer, Target, that operates in New York), this only underscores the Laws' parochialism.

      The City musters no argument about why the Laws create an exemption for purely local grocery delivery services in the first place, except to say that it envisions rules to cover them in the future (allegedly by 2027). By using the degree of local presence to determine the degree of regulatory burden, Defendants use an obvious "proxy and correlative" to discriminate against those beyond the five boroughs. *Variscite NY Four, LLC v. N.Y.S. Cannabis Control Bd.*, 152 F.4th 47, 63 (2d Cir. 2025). True, the Laws' discrimination may "ha[ve] some holes … But it is sufficiently obvious from the face of" the Laws that they favor New Yorkers and harm out-of-staters. *Id.* at 64; *see also Hearing Testimony Before the Comm. on Consumer & Worker Prot.* 71 (N.Y., New York, June 21, 2024), Dkt. No. 10-9 (constituent requests to City Council to "support local businesses, and not the giant corporations"); *id.* at 74, 76 (similar). *Compare DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 302 (S.D.N.Y. 2023) ("Plaintiffs have plausibly pleaded that the City's legislation [regarding third-party food delivery services] harbored a discriminatory purpose [in violation of the dormant Commerce Clause]."), *and id.* ("The plausibility of this allegation is enhanced by the legislative history …. Plaintiffs plausibly allege that the carveout [for entities serving fewer than 20 restaurants] kept the bill from applying to any entity located in New York."), *with* Dkt. No. 38, at 3 (noting that the "City Council passed Local Law 124" to address "a loophole in the [third-party food delivery service] regulatory scheme").

      At bottom, the City still offers no cogent explanation for Local Law 124's local exemption. The City says that the exemption "ensures the Local Law regulates local conduct." Dkt. No. 38, at 2. But that explanation is nonsensical for two reasons. First, Local Law 124 already regulates deliveries originating from outside City limits; the only thing that stops at City limits is the exemption. And second, as the City admits, Local Law 123 has no such explicit exemption. So by the City's rationale, Local Law 123 is somehow infirm because it *fails* to regulate only local conduct.

# SIDLEY

Hon. John G. Koeltl
January 20, 2026
Page 3

      Finally, Defendants' discussion of new minimum-pay requirements for "delivery services" coming into effect by March 2027 effectively concedes that (preemption aside) the City could have enacted the Local Law sanitized of its constitutional infirmities. Defendants note that the upcoming "minimum pay requirements will also cover delivery services that do offer grocery delivery but exclusively from their own stores or warehouses in NYC." *Id.* at 3. Subjecting businesses without an extensive local presence to the Local Laws in the interim is not something the dormant Commerce Clause allows.

      By failing to explain the exemption, the City says all the Court needs to know. The exemption can be explained on only one ground: local protectionism. And that is the one ground denied to the City by the Commerce Clause. *See C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) (explaining that the "central rationale" of the antidiscrimination rule is to "prohibit state or municipal laws whose object is local economic protectionism").

      For these reasons and those in Instacart's motion papers, the Court should preliminarily enjoin the Local Laws.

                                                                 Sincerely,

                                                    */s/ Eamon P. Joyce*

                                                    Eamon P. Joyce

EPJ

cc:     All counsel (via ECF)